There are "appropriate circumstances under which an award may be made when medical evidence on the causal relationship between the injury and the accident is unconclusive, indecisive, fragmentary or even non-existent." Slizewski v. Int'l Seafood,Inc., 46 N.C. 228, 264 S.E.2d 810 (1980).
 In the compensation cases holding medical testimony unnecessary to make a prima facie case of causation, the distinguishing features are an uncomplicated situation, the immediate appearance of symptoms, the prompt reporting of the occurrence by the workman to his supervisor and consultation with a physician, and the fact that the plaintiff was theretofore in good health and free from any disability of the kind involved. A further relevant factor is the absence of expert testimony that the alleged precipitating event could not have been the cause of the injury . . . .
Click v. Pilot Freight Carriers, 41 N.C. App. 458, 462,255 S.E.2d 192, 195 (1979).
In this case, the weight of evidence supports the plaintiff's testimony and the hearing Deputy's finding that plaintiff was not disabled from working by the accident, although he was kept out of work for two weeks due to concern that he might have another blackout episode. When he saw Dr. de la Torre a month after the accident, the plaintiff "looked as bad as he was before, but not necessarily worse objectively" than when the doctor had last seen him in 1990. In fact, he noted that plaintiff lacked the radiation of pain into his right arm of which he complained in 1990, although plaintiff had the same tingling or numbness in fingers of that extremity. In 1990, it was "painful to shave and drive." The doctor noted, and the plaintiff agreed, that the latter said his symptoms had progressively increased over the prior 5 or 6 months. Plaintiff testified that the doctor did not associate the October, 20, 1992 surgery with the August 26, 1992 accident, and the doctor — just prior to the surgery — noted that he specifically declined to do so when asked. When asked on deposition if "the spondylosis was made worse by the accident", he responded that "it looked . . . like the worsening had been occurring already before the accident." He could not say that the surgery was necessary because of the accident. While acknowledging that a series of traumas could cause cervical spondylosis, and that a single blow could exacerbate it, he responded to a hypothetical positing that plaintiff struck his head on the roof of the car during the accident (although the accident report indicated plaintiff was using a seatbelt at the time), by saying that plaintiff might have thereby worsened hissymptoms because "the big [bone] spurs that already existed can bump the nerve roots" — suggesting again that the pre-operative testing and his observations during surgery to remove those spurs and fuse one of the several diseased interspaces left him with the impression that no permanent damaged had resulted from the accident. Temporary irritation was also suggested by plaintiff's initial testimony emphasizing pain for "several days after" the accident.
This is not a case in which the medical opinion evidence is missing or weak. Even with causation questions in spine trauma cases — "one of the most difficult problems in legal medicine" (Click, at 167) — we can make an award when medical testimony combines with the claimant's credible complaints to make it more probable than not that the injury was caused by the accident. But in this instance, the doctor's testimony conflicts with any inference that plaintiff's condition was materially accelerated or aggravated by the accident. Consequently, I respectfully dissent.
 S/ _________________ J. RANDOLPH WARD COMMISSIONER
JRW/md
The undersigned acknowledge that the foregoing dissent has been read:
S/ _________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________ LAURA K. MAVRETIC COMMISSIONER